IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| KEVIN JOHNSON,<br><br>        Plaintiff,<br><br>v.<br><br>VIRGINIA DEPARTMENT OF CORRECTIONS, DIRECTOR CHADWICK S. DOTSON, in his official capacity; CHIEF OF CORRECTIONS OPERATIONS A. DAVID ROBINSON, in his official and individual capacities; BETH CABELL, in her official and individual capacities; WARDEN KEMSY BOWLES, in his official capacities; WARDEN KEVIN MCCOY, in his individual capacity; SGT. MATTHEW BLAHA, in his individual capacity; SGT. BROOKS WALLACE, in his individual capacity; OFFICER SMITH, in his individual capacity; WARDEN RICK WHITE, in his official and individual capacity; HEALTH SERVICES ADMINISTRATOR D. TRENT, in his official and individual capacity; SENIOR MENTAL HEALTH CLINICIAN E. CREECH, in his official and individual capacity; MENTAL HEALTH CLINICIAN J. MONIHAN, in his official and individual capacity; and CHIEF OF SECURITY MAJOR JOHNNY HALL, in his official and individual capacity,<br><br>        Defendants. | Civ. Case No. 3:24-cv-00080<br>The Honorable Henry E. Hudson |

## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Kevin Johnson, an incarcerated activist in the custody of the Virginia Department of Corrections (VADOC), respectfully moves for a temporary restraining order pursuant to Federal Rule of Civil Procedure 65. In support of this motion and in addition to the attached memorandum, he states as follows:

1.      Mr. Johnson suffers from prostate cancer and chronic conditions indicative of heart issues, including edema, cough, fatigue, and weight gain from fluid retention.

2.      Mr. Johnson has a practice of speaking out against abuses in the prison system and has been subject to several rounds of serious retaliation by VADOC officials as a result. Most recently, he was subject to a raid of his cell in the middle of the night, a transfer to solitary confinement based on planted evidence "discovered" in that raid, a retaliatory transfer from Sussex I State Prison outside Richmond to Red Onion State Prison (a supermax facility) across the state, and truly inhumane living conditions while engaging in a hunger strike to protest the use of solitary confinement at Red Onion State Prison. Those conditions included a lack of access to water, hygiene items, clothing changes, full bedding, showers, appropriate room temperatures, recreation time, writing materials, telephone calls, messages via a kiosk or tablets, and in-person visitation.

3.      Mr. Johnson is likely to succeed on his First Amendment retaliation claim because he can show that he engaged in First Amendment protected activity by speaking out about the prison system, VADOC took actions that adversely affected him by transferring him to solitary confinement and to a supermax prison, these actions would have deterred a person of ordinary firmness from exercising his First Amendment Rights, VADOC took these actions because of Mr. Johnson's exercise of his First Amendment rights, and VADOC's actions were certainly cause more than an inconvenience—they fundamentally threatened Mr. Johnson's life.

4.      Mr. Johnson is also likely to succeed on his Eighth Amendment conditions-of-confinement claim because he was detained in conditions that did not permit him access to drinking water, an important human need. He was also deprived of basic hygiene materials and warmth. This deprivation was not merely deliberately indifferent but was in fact intentional by Defendants as an effort to "break" Mr. Johnson of his First-Amendment-protected hunger strike.

5.      Mr. Johnson is incredibly ill and at risk of death because of Defendants' retaliation

and failure to provide the basic necessities of life. If Defendants continue to retaliate against him, he risks serious illness and death, the archetypical irreparable harm.

6. The balance of equities is decisively in favor of Mr. Johnson, and a temporary restraining order is in the public interest.

7. Specifically, Mr. Johnson has an interest in staying alive. He also has an interest in drinking water, in living in a cell with a bearable temperature, in not being sprayed with gas without provocation, in not being transferred to long-term solitary confinement, and in being able to speak with his family and friends through in-person visitation and the prison's digital messaging. More fundamentally, he has an interest in exercising his First Amendment rights without fear of severe reprisal.

8. In contrast, the government defendants cannot have an interest in engaging in unconstitutional conduct, such as their recent treatment of Johnson.

9. The public interest is served by prisoners being able to exercise their free speech rights, however limited by the fact of incarceration, without threat of punishment. Members of the general public, the judiciary, policy makers, and VADOC officials themselves all rely on the ability of incarcerated people to exercise their constitutionally protected rights to speak, file grievances, and file lawsuits; indeed, this ability is necessary for the functioning of democratic accountability mechanisms.

10. Mr. Johnson does not want to die from this hunger strike. He simply wants VADOC officials to take seriously his concerns about returning to a prison that has a history of abusing him, including by forcing him to spend 14 years in solitary confinement and subjecting him to racialized assaults and violence. He also wants them to take seriously his need to be close to life-saving medical providers who are treating his cancer and heart-related issues.

11. Mr. Johnson is currently in dire condition, having been admitted to the Virginia

Commonwealth University's hospital (VCU) on February 7, 2024—his approximately seventh hospitalization since he began his hunger strike—with chest pains and suffering from severe dehydration.

12. Mr. Johnson remains at harm even when he decides to begin eating again. After a hunger strike of his length, should he choose to begin eating outside of medical supervision, he faces a very real risk of dying because his body is not able to process the food he eats. This medical attention is further necessary to address any corollary effects on his health—including his cancer and chronic heart conditions—from the hunger strike.

13. For all these reasons, Mr. Johnson requires ongoing medical care in a hospital facility to save his life at this point.

14. Plaintiff attempted to negotiate emergency care for Mr. Johnson with defense counsel on February 7, 2024, in order to obviate the need for this motion. However, defense counsel was unwilling to confirm that Mr. Johnson could stay in the eastern region during and after this lawsuit to support the critical continuity of his medical care, and they would not permit him access to writing materials to contact his loved ones and continue to prosecute his ongoing *pro se* cases. Plaintiff feared that there was not sufficient time to delay a motion to this Court any further.

15. Mr. Johnson now seeks the following relief in the form of a temporary restraining order (a Proposed Order is attached as Exhibit A):

   a. An order requiring that Mr. Johnson remain in the care of VCU medical providers until he completes both his hunger strike and the process of medical refeeding, for at least two weeks or as long as his doctors believe would be medically beneficial, whichever is longer;

   b. An order requiring that VADOC retain Mr. Johnson in a prison in the eastern region of the state throughout the pendency of this lawsuit, so that Mr. Johnson may

continue his medical care for cancer and heart issues, which may have been exacerbated by the length of his hunger strike, and so that Mr. Johnson may meaningfully participate in the prosecution of this lawsuit;

c. An order requiring that VADOC retain Mr. Johnson in a cell with running water; the same temperature levels as other cells in the facility; the same changes of clothing, bedding, and hygiene items as other prisoners are permitted; the same access to showers and recreation that other prisoners are permitted; access to in-person visitation and a tablet and/or kiosk for communication; as well as weekly or twice-a-week personal calls, unrestricted legal calls, and access to writing materials throughout the pendency of this case, including while Mr. Johnson is in the hospital;

d. An order directing VADOC to strongly consider maintaining Mr. Johnson in a prison near Richmond after the resolution of this case to maintain continuity of care with his cancer providers and any additional medical care providers for his heart or other conditions; and

e. Any and all other relief this Court deems appropriate.

Dated: February 9, 2024

Respectfully submitted,

*/s/ Mark J. Krudys*
Mark J. Krudys (VSB# 30718)
Danny Zemel (VSB# 95073)
THE KRUDYS LAW FIRM, PLC
Truist Place, 919 E. Main Street, Suite 2020
Richmond, VA 23219
Phone: (804) 774-7950
Fax: (804) 381-4458
mkrudys@krudys.com
dzemel@krudys.com

*/s/ Miriam R. Nemeth*
Miriam R. Nemeth*
Samuel Weiss**
RIGHTS BEHIND BARS

416 Florida Avenue, NW #26152
Washington, D.C. 20001
miriam@rightsbehindbars.org
sam@rightsbehindbars.org

*Attorneys for the Plaintiffs*

*\*Admitted pro hac vice*
*\*\*Pro hac vice application forthcoming*

### Certificate of Service

I hereby certify that on this 9th day of February 2024, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing (NEF) to all counsel of record.

By: */s/ Mark J. Krudys*
    Counsel

Mark J. Krudys (VSB# 30718)
THE KRUDYS LAW FIRM, PLC
Truist Place, 919 E. Main Street, Suite 2020
Richmond, VA 23219
Phone: (804) 774-7950
Fax: (804) 381-4458
mkrudys@krudys.com
*Counsel for Plaintiff*