IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KEVIN JOHNSON,
    Plaintiff,

v.                                             Civil Action No. 3:24-cv-00080 (HEH)

VIRGINIA DEPARTMENT
OF CORRECTIONS, *et al.*,
    Defendants.

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff's Motion for Hearing and Request for Emergency Hearing on Defendant's Breach of Settlement Agreement (ECF No. 98), Motion to Compel (ECF No. 102), Motion for Contempt (ECF No. 107), and Supplemental Motion to Enforce Settlement Agreement (ECF No. 108). This matter is now ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and oral argument would not aid the decisional process. Having reviewed the motions, the accompanying memoranda in support of the motions, and all supporting documentation therein, Plaintiff's Motion for Hearing and Request for Emergency Hearing on Defendant's Breach of Settlement Agreement (ECF No. 98); Supplemental Motion to Enforce the Settlement Agreement (ECF No. 108); Motion to Compel Production of Documents and Things (ECF No. 102); and Motion for Contempt (ECF No. 107) are DENIED without prejudice.

**I.    BACKGROUND & JURISDICTION**

Plaintiff Kevin Johnson, a Virginia inmate represented by counsel at the time this case was pending, commenced the underlying action on February 5, 2024. Plaintiff brought suit against the Virginia Department of Corrections ("VDOC") and several VDOC employees, alleging that Defendants retaliated against him for exercising his First Amendment rights while incarcerated.

1

(ECF No. 1 at 1-3.) Plaintiff sought monetary and injunctive relief, including an order that he be transferred from Red Onion State Prison to another VDOC facility. (*Id.* at 31-32.)

On May 2, 2024, Senior United States District Judge Henry E. Hudson referred the matter to the undersigned for settlement proceedings. (ECF No. 41.) The matter proceeded to a Settlement Conference on June 14, 2024 (ECF No. 42) and again on December 4, 2024. (ECF No. 82.) The parties reached a settlement of all claims during the December 4, 2024 Settlement Conference (ECF No. 87). On December 5, 2024, Plaintiff, through counsel, filed a Notice of Settlement (ECF No. 87) along with the fully executed settlement agreement (the "Settlement Agreement," ECF No. 87-1).

Shortly after filing the Settlement Agreement with the Court, Plaintiff's counsel filed a Stipulation of Dismissal (ECF No. 88), which was granted on December 20, 2024. (ECF No. 97.) The Court's Dismissal Order mirrors the Settlement Agreement's jurisdictional language and provides that the Court "shall retain jurisdiction for the sole purpose of enforcing the terms of the settlement agreement pursuant to *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375 (1994)." (*Id.*) The Court then dismissed the action with prejudice and closed the case. (*Id.*)

On June 2, 2025, Plaintiff filed the Motion for Hearing and Request for Emergency Hearing on Defendant's Breach of Settlement Agreement (ECF No. 98, the "Motion for Hearing"), pursuant to the *Kokkonen* language contained in the dismissal order. (ECF No. 97.)[1] On June 4, 2025, Defendants Matthew Blaha, Kemsy Bowles, Beth Cabell, E. Creech, Chadwick S. Dotson, Johnny Hall, Kevin McCoy, J. Monihan, A. David Robinson, Smith, D. Trent, VDOC, Brooks Wallace, and Rick White (collectively, "Defendants") filed a

---

[1] Parties to a settlement agreement may agree to allow a District Court to retain jurisdiction over an action to enforce the terms and obligations under the settlement agreement so long as such language is incorporated into the court's dismissal order. *See Kokkonen.*, 511 U.S. at 381.

2

Memorandum in Opposition to the Motion. (ECF No. 99.) In their Response, Defendants argue that the Motion for Emergency Hearing should be denied for two reasons. First, they argue that Plaintiff improperly filed the Motion for Emergency Hearing *pro se* because he is represented by counsel. (*Id.* at 2.) Second, Defendants maintain that Plaintiff failed to identify a particular term of the Settlement Agreement that he claims has been violated, and thus, is not entitled to a hearing to address any alleged breach. (*Id.*)

Because this action has been closed since December 2024 and Plaintiff is incarcerated out of state, the Court ordered Plaintiff's counsel to file a notice certifying whether he continued to represent Plaintiff in this matter. (ECF No. 100 at 2.) On June 5, 2025, counsel notified the Court that he no longer represented Plaintiff in the matter. (ECF No. 101.) Accordingly, Plaintiff is proceeding *pro se* on the pending motions.

On June 25, 2025, Plaintiff filed his Motion to Compel Production of Documents and Things (the "Motion to Compel," ECF No. 102). There, Plaintiff states that he mailed a request to defense counsel to produce all his physical property and legal property, which he claims was left in Virginia upon his transfer to South Carolina. (*Id.* at 1.) He also requests "all exchanges and agreements by and between defense counsel's office, and/or Virginia and South Carolina officials concerning plaintiff's transfer to South Carolina and his treatment and conditions there." (*Id.*) His request was purportedly made "in pursuit of enforcing" the Settlement Agreement. (*Id.*)

Defendants filed their opposition to Plaintiff's Motion to Compel on July 8, 2025. (ECF No. 103.) There, Defendants argue that Plaintiff is not entitled to an order compelling production because they never received the purported discovery request from Plaintiff, but even if they had, the South Carolina Department of Corrections ("SCDC") will not permit Plaintiff to have his property from Virginia. (*Id.* at 5.) Further, Defendants contend that the request is not relevant to

3

any claim or defense in this action, nor is it proportional to the needs of the case. (*Id.* at 6.) In addressing Plaintiff's broader motivations, Defendants believe the relief Plaintiff seeks falls outside this Court's jurisdiction. (*Id.* at 4.) They note that the Court retained jurisdiction in this matter for the limited purpose of enforcing the terms of the Settlement Agreement, but Plaintiff has requested that this Court exceed its authority by compelling Defendants to produce confidential information unrelated to the settlement reached in this case. (*Id.*)

On August 7, 2025, Plaintiff filed a Motion for Contempt. (ECF No. 107.) In this motion, Plaintiff requests that the Court hold Defendants in contempt as they continue to breach the settlement agreement. (*Id.*) Defendants filed both their Opposition to Plaintiff's Motion for Contempt (ECF No. 111) and their Opposition to Plaintiff's Motion to Enforce the Settlement Agreement (ECF No. 112) on August 21, 2025. On September 15, 2025, the District Court referred this matter to the undersigned for full disposition of Plaintiff's Motions. (ECF No. 114.) Subsequently, the undersigned entered an Order on September 15, 2025 addressing Plaintiff's various filings and construing ECF Nos. 98, 102, 107, and 108, collectively, as Plaintiff's Motion to Enforce the Settlement Agreement. (ECF No. 115.)

## II.    LEGAL STANDARD

As a threshold matter, *pro se* pleadings are required to be "liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).  However, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The requirement of liberal construction "does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court." *James v. Wright*, No. 2:20-cv-4228, 2020 WL 8083879, at *1 (D.S.C. Dec. 11,

2020) (citing *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990)). Because Plaintiff is proceeding *pro se*, the Court will assess Plaintiff's motions accordingly.

District courts possess "inherent authority, deriving from their equity power, to enforce settlement agreements." *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002) (citing *Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981)). To enforce a settlement agreement, the court must: (1) find that the parties agreed to settle the case; and (2) be able to determine terms of the settlement. *Moore v. Beaufort Cty., N.C.*, 936 F.2d 159, 162 (4th Cir. 1991). "In deciding whether a settlement agreement has been reached, the Court looks to the objectively manifested intentions of the parties." *Id.* (citing *Piver v. Pender County Bd. of Educ.,* 835 F.2d 1076, 1083 (4th Cir.1987)). The clearest manifestation of intent is the contract's plain language. *Providence Square Assoc., L.L.C. v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir. 2000). If a court determines that the parties entered into a binding settlement agreement, it may enforce the agreement without the need for a hearing. *Cosby v. Huntington Ingalls, Inc.*, No. 4:17cv112, 2018 WL 1511735, at *2 (E.D. Va. Mar. 27, 2018) (citing *Hensley*, 277 F.3d at 540). A settlement agreement is a contract, and therefore standard contract principles apply when considering a motion to enforce a settlement agreement. *Bradley v. Am. Household Inc.*, 378 F.3d 373, 380 (4th Cir. 2004).

Here, the parties have reached a complete agreement to resolve Plaintiff's claims. The Settlement Agreement was the culmination of two settlement conferences and was signed by Plaintiff, Plaintiff's former counsel, and counsel for Defendants. (ECF No. 87-1.) It plainly contains a complete agreement, with all material terms sufficiently definite for the Court to determine each term's meaning, and it sets forth the parties' respective rights and obligations. (*Id.*)

5

Thus, the Court finds that the Settlement Agreement is a valid and enforceable contract between the parties.

### III. DISCUSSION

Next, the Court turns to enforcing the Settlement Agreement. In exchange for Plaintiff's voluntary dismissal of the lawsuit, Defendants agreed to, in relevant part:

> initiate the process for Plaintiff to be transferred to another state's correctional system pursuant to the Interstate Corrections Compact, Virginia Code § 53.1-216, and in accordance with VDOC Operating Procedure 020.2, Compact for Interstate Transfer of Incarcerated Offenders. VDOC will first send a Request to Proposed Receiving State for Approval of Compact Transfer to the State of Oregon, subject to Oregon's acceptance. If Oregon disapproves the interstate transfer request, VDOC will send a Request to Proposed Receiving State for Approval of Compact Transfer to: (1) Washington (state), (2) Maryland, and (3) South Carolina, in that order of preference.

(ECF No. 87-1, ¶ 2.) The agreement also sets forth that "Plaintiff acknowledges that VDOC cannot guarantee that the Plaintiff will be transferred pursuant to an Interstate Corrections Compact transfer" and certifies that "Plaintiff understands that Defendants and VDOC cannot guarantee or control the actions of any state other than Virginia." (*Id.*) Thereafter, on May 1, 2025, Plaintiff was transferred to the SCDC.

Plaintiff now moves for an emergency hearing "to find defendants and defense counsel in substantial breach" of the Settlement Agreement. In particular, he argues that Defendants violated his rights under the Interstate Corrections Compact ("ICC"),[2] which he claims is incorporated into

---

[2] The ICC enables participating states to enter into agreements for cooperative care, treatment, and housing of offenders sentenced to or confined in prisons and other correctional institutions. Virginia is a participant in the ICC. *See* Va. Code Ann. § 53.1-216. Virginia Code §53.1-216 states, in relevant part:

> All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same

the Settlement Agreement. (ECF No. 98[3].) However, mere reference to the ICC, without more, does not incorporate it in its entirety into the Settlement Agreement, such that it would render any breach of the ICC to be a breach of the Settlement Agreement. Indeed, the context in which the ICC was referenced relates only to VDOC's promise to "initiate the process for Plaintiff to be transferred to another state's correctional system pursuant to the [ICC]," and does not, thereby, bind VDOC to other, unrelated provisions of the ICC in any actionable manner. (*Id.*) Any alleged violation of Virginia's obligations under the ICC, therefore, does not find a remedy through this Court in the present action, as it has jurisdiction only to enforce the Settlement Agreement, and the ICC, simply by reference alone, is not wholly incorporated into its provisions or scope.

Relatedly, Plaintiff alleges that the SCDC "ha[s] further breached the [Settlement Agreement] as of July 18, 2025 when they revoked his single cell general population status . . . and threw [Plaintiff] into tortuous solitary confinement housing." (ECF No. 108.) According to Defendants, Plaintiff was housed at Keen Mountain Correctional Center on a single-cell status during the brief period of time when VDOC arranged his out-of-state transfer. Thereafter, Plaintiff was transferred to the SCDC, which did not continue to house him in a single-occupancy cell. He

---

        institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state.

[3] In this filing, Plaintiff also seeks permission from the Court "to contest and move to set aside the said Settlement Agreement as procured by duress, coercion, and undue influence." (ECF No. 98 at 1.) However, the Court has previously ruled that it will no longer construe Plaintiff's Motion to Enforce and subsequent pleadings "to the extent that they move to set aside the parties' Settlement Agreement." (ECF No. 115 at 2.) Accordingly, the Court's analysis will concern only whether Defendants breached the Settlement Agreement, and not whether there exists a valid, enforceable Settlement Agreement in the first place.

7

argues that such treatment is in violation of the Settlement Agreement because his transfer, by and through the Settlement Agreement, was pursuant to the ICC. (ECF No. 108.)

However, the Court cannot find that the SCDC's decision not to place Plaintiff in a single-occupancy cell is in violation of the Settlement Agreement for two reasons. First, the SCDC is not a party to the Settlement Agreement, and it cannot be in breach of its provisions. Second, the Settlement Agreement did not promise that Plaintiff would continue to be housed in a single-occupancy cell, nor did it guarantee that such an option would be available to Plaintiff in the transfer institution. Indeed, the Settlement Agreement merely agreed to initiate the process of transferring Plaintiff out of state, with priority given to South Carolina as a candidate state, to which Plaintiff agreed to be transferred. Similarly, the Court finds Plaintiff's argument unavailing, to the extent that he argues that VDOC violated *its* obligations under the Settlement Agreement on account of the *SCDC's* allegedly improper treatment of him. The Court cannot locate such an obligation in the Settlement Agreement, nor would it, as the underlying settlement was an agreement by Defendants and Plaintiff to settle Plaintiff's claims against Defendants, and did not resolve or involve any claims related to his treatment in the SCDC. However, to the extent Plaintiff believes his constitutional rights were violated by independent actions taken after the settlement was reached, and that these claims are not barred by the release provisions of the Settlement Agreement, then Plaintiff may file a new civil rights action pursuant to 42 U.S.C. § 1983 in an appropriate court with subject matter jurisdiction over such claims.

Relatedly, the Court finds that Plaintiff's allegations that VDOC violated the Settlement Agreement by refusing to transfer his personal belongings to the SCDC are without merit. Specifically, Plaintiff complains that VDOC refuses to send his personal belongings to the SCDC institution where is now housed, and, by refusing to give him his personal property, Defendants

8

hinder his ability to take legal action, such as filing in this Court. (ECF No. 110.) In addition to his personal belongings, Plaintiff also moved the Court to compel Defendants to produce "any and all correspondences and agreements between any and all agents of the [VDOC] and the SCDC concerning Plaintiff and his transfer to the SCDC under Virginia's Interstate Corrections Compact and any other agreements." (ECF No. 102-1.) Similarly, he requests the same as to the Virginia Attorney General's Office and the SCDC. (*Id.*)

In response, Defendants state that the SCDC refused to accept Plaintiff's personal belongings as part of the transfer process, and that: (1) VDOC is unable to force the SCDC to accept material belongings of prisoners transferred to their custody; and (2) the SCDC's refusal to do so does not mean that Defendants are in breach of the Settlement Agreement. (ECF No. 103.) They add that Plaintiff has not been deterred from taking legal action, as he has filed numerous state claims against VDOC during the time he was apparently deprived of his property.

The Court agrees with Defendants and finds that the Settlement Agreement does not oblige VDOC to transfer Plaintiff's personal belongings to the SCDC. The Settlement Agreement is silent regarding Plaintiff's property in the event that he is transferred out of state. As a result, the Court cannot enforce a term that does not exist in the Settlement Agreement. *See, e.g.*, *Bradley*, 378 F.3d 373, 380 (citing *Hensley v. Alcon Lab., Inc.*, 227 F.3d 535, 541 (4th Cir. 1983) ("Courts enforce only those settlement terms on which the parties have reached agreement.")). Additionally, this Court lacks jurisdiction to direct the SCDC to accept his personal belongings without reservation. Moreover, any attempt to "compel discovery" on the issue is outside the scope of the Court's jurisdiction, as the Settlement Agreement does not compel Defendants to turn over such records, and the case has been closed since December 2024. Thus, Plaintiff's Motion to Compel (ECF No. 102) is DENIED in its entirety.

Finally, the Court addresses Plaintiff's Motion for Contempt (ECF No. 107), in which he argues that Defendants and their counsel should be held in civil contempt based on the conditions of his confinement in South Carolina. (ECF No. 107 at 8.). He claims that he is entitled to relief by virtue of the parties' Settlement Agreement, Virginia law, and the United States Constitution. (*Id.*) In their Opposition to Plaintiff's Motion for Contempt, Defendants argue that because the Settlement Agreement was not incorporated into an Order of the Court, any purported breach would not violate a Court order and amount to contempt. (ECF No. 111 at 2.)

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). Contempt is a "drastic remedy" for which the movant carries the "heavy burden" to establish. *Morgan v. Barry*, 596 F. Supp. 897, 898 (D.D.C. 1984). The Fourth Circuit has held that to establish civil contempt, the movant must prove each of the four elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor has actual or constructive knowledge; (2) the decree was in the movant's favor; (3) the alleged contemnor by its conduct violated the terms of the decree and had knowledge (at least constructive) of such violation; and (4) the movant suffered harm as a result.

*Redner's Mkts., Inc. v. Joppatowne G.P. Ltd. P'ship*, 608 F. Appx. 130, 131 (4th Cir. 2015) (citing *JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 359 F.3d 699, 705 (4th Cir. 2005)). "Willfulness is not an element of civil contempt." *Id.* (citing *United States v. Westbrooks*, 780 F.3d 593, 596-97 n.3 (4th Cir. 2015). Here, Plaintiff's Motion for Contempt does not make it past the first element, as there exists no Court decree related to Plaintiff's treatment in the SCDC that

Defendants violated. Therefore, Plaintiff's Motion for Contempt is DENIED without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Hearing and Request for Emergency Hearing on Defendant's Breach of Settlement Agreement (ECF No. 98); Supplemental Motion to Enforce the Settlement Agreement (ECF No. 108); Motion to Compel Production of Documents and Things (ECF No. 102); and Motion for Contempt (ECF No. 107) are DENIED without prejudice. An appropriate Order shall issue.

The Clerk is directed to send a copy of this Memorandum Order to all counsel of record and to any party not represented by counsel.

It is SO ORDERED.

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: February 9, 2026